**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------

D.R. and E.F., on behalf of N.R.,

Plaintiffs

- against -                                        **COMPLAINT**

New York City Department of Education,              **08 CV 1995 (RJS) (MHD)**

Defendant.

----------------------------------------------------------------

Plaintiffs, D.R. and E.F., on behalf of N.R., by their attorneys, Mayerson & Associates, as and for their Complaint, alleges and states the following:

1. Plaintiff N.R., the daughter of plaintiff D.R. and E.F., is a minor child who has been diagnosed with a serious autism spectrum disorder. Even on the autism spectrum, N.R. is considered severely autistic, yet she has demonstrable potential to learn with appropriate programming and support.

2. N.R. was at all relevant times was and is a student residing within the New York City School District entitled to all rights, entitlements, and procedural safeguards mandated by applicable law and statutes including, but not limited to the Individuals with Disabilities Education Improvement Act ("IDEIA"), 20 U.S.C. § 1400, *et. seq.*, the pertinent implementing regulations promulgated under the Code of Federal Regulations, Article 89 of the New York State Education law and Part 200 of the Commissioner's Regulations.

3. Plaintiffs D.R. and E.F. are the parents of N.R. Plaintiffs are residents of the State of New York, residing at all relevant times at an address in Manhattan within the New York City Department of Education's Region 10, District 3.

4.  N.R. and her parents D.R. and E.F. are not expressly identified herein by their given names or addresses because of the privacy guarantees provided in the IDEIA statute, as well as in the Family Educational Rights Privacy Act, 20 U.S.C. § 1232(g) and 34 C.F.R. § 99.

5.  Defendant New York City Department of Education ("NYCDOE"), upon information and belief, is a duly constituted school district organized under the laws of the State of New York, and is the agency charged with the obligations to provide N.R. with a free and appropriate public education ("FAPE"), *see infra*, ¶ 8.

## THE RELIEF BEING SOUGHT

6.  This action is brought pursuant to the provisions of 20 U.S.C. § 1400, *et. seq.*, more commonly known as the IDEIA and, in particular, 20 U.S.C. §§ 1415(i)(2) and (3).  *See also*, 34 C.F.R. §§ 300.516 and 300.517.

7.  This action is being brought to secure statutory attorneys' fees that plaintiffs are entitled to recover pursuant to the fee-shifting provisions of the federal IDEIA statute, 20 U.S.C. §§ 1415(i)(3)(A)-(G).  D.R. and E.F., on behalf of N.R. should be awarded attorneys' fees as the substantially prevailing party in due process hearings for the 2003-2004, 2005-2006, and 2006-2007 school years under New York City Impartial Hearing Office Case Numbers 59055, 104577, and 106315, respectively, and in the context of a hotly contested "pendency" appeal to the New York Office of State Review in Case No. 111679, where the State Review Officer ruled in favor of plaintiffs.

## JURISDICTION AND VENUE

8.  This Court, pursuant to 20 U.S.C. §§ 1415(i)(2) and (3), 34 C.F.R. §§ 300.516 and 300.517, 28 U.S.C. §§ 1331 and 1367, has jurisdiction of this action without regard to the

amount in controversy.  Venue is proper in that plaintiff and defendant both reside in or are situated in this District.

9.  Pursuant to the IDEIA statute, as well as the New York State Education Law, all school agencies within the State are required to offer eligible students with disabilities special education programs and services that are tailored to meet the individual needs of each child with a disability.  The FAPE required under IDEIA will be different for each child, as IDEIA does not accept a "one size fits all" approach.

## FACTUAL BACKGROUND FOR THE 2003-2004 SCHOOL YEAR

10. On or about February 5, 2004, D.R. and E.F., through their attorneys, Mayerson & Associates, filed for an impartial hearing at the administrative level in an effort to secure reimbursement and other relief relating to the 2003-2004 school year for the cost and expenses of N.R.'s home-based program and services.  N.R.'s parents filed for due process due to the NYCDOE's failure to recommend and provide an appropriate placement and program individualized for N.R.'s specialized needs.

11. This case was withdrawn, without prejudice, because N.R.'s parents thought the case was being settled.  The NYCDOE never made a settlement offer and N.R.'s parents re-filed their request on or about April 7, 2005.

12. The evidentiary hearing on this matter took place on May 23, 2005.  Gary S. Mayerson, Esq., of Mayerson & Associates represented the plaintiff.  The NYCDOE conceded Prongs I and III of the Burlington/Carter test for relief.[1]  Plaintiffs bore the burden of proof in regards to the appropriateness of the services provided to N.R..

---

[1] Reference is made to School Committee of Burlington v. Dept. of Educ. of Massachusetts, 471 U.S. 359, 105 S.Ct. 1996 (1985), and Florence Court School Dist. Four v. Carter, 510 U.S. 7, 114 S.Ct. 361 (1993), which set the

13. The impartial hearing officer heard testimony from N.R.'s witnesses regarding the appropriateness of the services provided by private providers secured by N.R.'s parents. The NYCDOE did not offer any testimony or documentary evidence regarding the claims raised by N.R.'s parents.

14. By "Findings of Fact and Decision" date June 21, 2005, Impartial Hearing Officer Marc Weiner, Esq., rendered an award in favor of plaintiffs, establishing plaintiffs as the substantially prevailing party in this administrative due process proceeding.[2]

15. Defendant appealed from this administrative decision to New York's Office of State Review ("SRO"). In this appeal, defendant conceded not only Prongs I and III of the Burlington/Carter test for reimbursement, but also Prong II. The only issue on appeal is whether the impartial hearing officer erred by ordering the NYCDOE to reimburse N.R.'s parents for the cost of the ABA services without explicitly stating that proof of payment for the services was required.

16. In a Decision dated September 7, 2005, SRO Paul F. Kelly held that the NYCDOE should reimburse N.R.'s parents for the cost of ABA services, to the extent that they have proof of payment, and upheld the balance of the IHO's underlying decision (as it was not appealed from).[3] This award rendered plaintiffs as the substantially prevailing party at both the underlying administrative level, as well as the secondary level. Defendant never appealed from this decision, which thus became final and non-appealable on or about October 12, 2005.

---

standards for determining whether a handicapped child's unilateral educational placement is eligible for reimbursement relief.

[2] A copy of this decision is annexed hereto as Exhibit A. Please note that all exhibits have been redacted to protect the particular family member's identity. See ¶ 3.

[3] A copy of this decision is annexed hereto as Exhibit B.

**FACTUAL BACKGROUND FOR THE 2005-2006 SCHOOL YEAR**

17. On or about October 5, 2005, D.R. and E.F., through their attorneys, Mayerson & Associates, filed for an impartial hearing at the administrative level in an effort to secure reimbursement and other relief relating to the 2005-2006 school year for the cost and expenses of N.R.'s program and services. N.R.'s parents filed for due process due to the NYCDOE's failure to recommend and provide an appropriate placement and program individualized for N.R.'s unique needs.

18. The evidentiary hearing on this matter took place on June 11, October 20, and November 12, 2006. Gary S. Mayerson, Esq., of Mayerson & Associates represented the plaintiff. The NYCDOE presented little challenge as to Prong I of the Burlington/Carter test. However, the NYCDOE challenged the appropriateness of N.R.'s home-based program and did not concede Prong III. Plaintiffs bore the burden of proof in regards to the appropriateness of the services provided to N.R..

19. The impartial hearing officer heard testimony from N.R.'s witnesses regarding the appropriateness of the services provided by private providers secured by N.R.'s parents. The NYCDOE did not offer any testimonial evidence and relied primarily on documentary evidence regarding the claims raised by N.R.'s parents.

20. By "Findings of Fact and Decision" date March 5, 2007, Impartial Hearing Officer Ralph Pennington, Jr., Esq., rendered an award in favor of plaintiffs, establishing plaintiffs as the substantially prevailing party in the 2005-2006 administrative due process proceeding.[4] Defendant never appealed from this underlying administrative decision, which thus became final and non-appealable on or about April 10, 2007.

---

[4] A redacted copy of the decision has been annexed hereto as Exhibit C.

## FACTUAL BACKGROUND FOR THE 2006-2007 SCHOOL YEAR

21. On or about September 1, 2006, and amended on September 12, 2006, plaintiffs, through their attorneys, Mayerson & Associates, filed for an impartial hearing at the administrative level in an effort to secure reimbursement and other relief relating to the 2006-2007 school year for the cost and expenses of N.R.'s program and related services.  N.R.'s parents filed for due process due to the NYCDOE's failure to recommend and provide an appropriate placement and program individualized for N.R.'s unique needs.

22. The evidentiary hearing on this matter took place on November 28, November 29, and December 22, of 2006, and on January 18 and February 2, 2007.  Gary S. Mayerson, Esq., of Mayerson & Associates represented the plaintiffs.  The NYCDOE conceded Prongs I and III of the <u>Burlington</u>/<u>Carter</u> test for relief, however, the NYCDOE vigorously challenged the appropriateness of N.R.'s home-based programming under the theory that "all children above the age of five go to school."  Plaintiffs bore the burden of proof in regards to the appropriateness of the services provided to N.R.

23. The impartial hearing officer heard testimony from N.R.'s witnesses regarding the appropriateness of the services provided by private providers secured by N.R.'s parents.  The NYCDOE offered two witnesses and no documentary evidence challenging the claims raised by N.R.'s parents.

24. By "Findings of Fact and Decision" date March 15, 2007, Impartial Hearing Officer Michael Kennedy Lloyd, Esq., rendered an award in favor of plaintiffs, establishing plaintiffs as the substantially prevailing party in the 2006-2007 administrative due process proceeding.[5] Defendant never appealed from this administrative decision, which thus became final and non-appealable on or about April 20, 2007.

---

[5] A copy of this decision has been annexed hereto as Exhibit D.

**FACTUAL BACKGROUND FOR THE 2007-2008 "PENDENCY" LITIGATION**

25. On or about August 31, 2007, D.R. and E.F., through their attorneys, Mayerson & Associates, filed for an impartial hearing at the administrative level in an effort to secure pendency entitlements, as well as reimbursement and other relief relating to the 2007-2008 school year for the cost and expenses of N.R.'s program and services.  N.R.'s parents filed for due process due to the NYCDOE's failure to recommend and provide an appropriate placement and program individualized for N.R.'s specialized needs.

26. Although the NYCDOE is supposed to honor and implement pendency on an automatic and unconditional basis, a pendency hearing on this matter took place on October 15, 2007. Gary S. Mayerson, Esq., of Mayerson & Associates represented the plaintiff.  The NYCDOE contended, pursuant to the SRO's Decision in Appeal No. 06-131, that N.R. had no pendency entitlements.[6]   Plaintiffs contended that N.R.'s pendency entitlements are automatic and unconditional, as a matter of law and statute, without the necessity of application, motion, or any other showing by N.R.'s counsel.

27. The impartial hearing officer heard testimony and requested written memoranda from both sides on this issue.  Plaintiffs' briefed the pendency issue through counsel.

28. By "Interim Order" date November 7, 2007, Impartial Hearing Officer Michael S. Lazan, Esq., rendered an award in favor of plaintiffs, ruling, over defendant's objection, that N.R.'s pendency entitlements were established by IHO Lloyd's unappealed decision from the 2006-2007 school year.[7]

---

[6] Reference is made to <u>Application of a Child with a Disability</u>, Appeal No. 06-131.  In 06-131, in dicta, State Review Officer Paul F. Kelly alleged that an unappealed IHO's decision could not provide the basis for a child's pendency entitlements under the IDEIA.
[7] A copy of this decision is annexed hereto as Exhibit E.

29. On or about December 12, 2007, defendant appealed from this administrative decision to the Office of State Review ("SRO").  Plaintiffs responded on or about January 4, 2008

30. In a Decision dated February 14, 2008, SRO Paul F. Kelly upheld the decision of IHO Lazan, based upon the legal analysis provided by plaintiffs' counsel.[8]  The SRO's decision has been recognized by advocacy groups as an important decision that vindicates and protects the pendency rights of all similarly situated children.  The SRO's decision rendered plaintiffs as the substantially prevailing party in regards to the pendency issue, litigated at both the underlying administrative level and the SRO level.

## CONCLUSION

31. The defendant is liable to pay plaintiffs their reasonable attorneys' fees arising out of N.R.'s IDEIA administrative due process proceedings, both at the IHO level and the SRO level, and in this action.  The fees requested herein are entirely reasonable and appropriate because:

(a) upon information and belief, plaintiffs' attorneys' office is the only firm in the country whose practice is devoted almost exclusively to representing children and adolescents with autism spectrum disorders, like N.R., in educational rights disputes;

(b) the principal of plaintiffs' attorneys' firm has testified before the United States Congress on the subject of the educational rights of children diagnosed with autism spectrum disorders;

(c) plaintiffs' attorneys have published and presented on the subject of the educational rights of children diagnosed with autism spectrum disorders;

(d) plaintiffs' attorneys have special knowledge and expertise concerning the educational needs of children diagnosed with autism spectrum disorders;

---

[8] A copy of this decision is annexed hereto as Exhibit F.

(e) plaintiffs' attorneys' office has represented children with autism spectrum disorders in numerous states across the nation, and has even consulted to families outside of the United States; and

(f) to the extent that there is a "prevailing rate" in the Southern District of New York for sophisticated autism intervention cases, plaintiffs' attorneys' prevailing rates are reasonable and within the applicable standard.

32. Necessary duties involved with preparing N.R.'s cases for administrative due process hearings for the 2003-2004, 2005-2006, 2006-2007, and 2007-2008 schools years included, but were not limited to: (a) corresponding with plaintiff and N.R.'s service providers; (b) holding numerous telephone conferences; (c) writing and filing impartial due process hearing requests; (d) reviewing and disclosing documentary information relevant to N.R.'s claims; (e) scheduling and preparing witnesses to testify at the hearings; (f) drafting and preparing post-hearing submissions; and (g) developing effective case presentations for the 2003-2004, 2005-2006, 2006-2007 and 2007-2008 school years.

33. For all of the above efforts, plaintiffs should be awarded attorneys' fees, related costs and disbursements for the 2003-2004, 2005-2006, 2006-2007, and 2007-2008 school years in an amount to be set by this Court.

## PRAYER FOR RELIEF

WHEREFORE, by reason of the foregoing, this Court should (a) fix and award plaintiffs their statutory attorneys' fees and related costs and disbursements from the IDEIA due process proceedings for 2003-2004, 2005-2006, and 2006-2007 school years in an amount to be set by the Court, (b) fix and award plaintiffs their statutory attorneys' fees and related costs and

disbursements from the pendency proceedings at the IHO and SRO levels, (c) award plaintiffs

the attorneys' fees and related costs and disbursements associated with this action in an amount

to be set by the Court, and (d) award plaintiffs such other, different and further relief as this

Court deems proper.

Dated: February 28, 2008
     New York, New York             Gary S. Mayerson (GSM 8413)
                                Mayerson & Associates
                                330 West 38th Street, Suite 600
                                New York, New York 10018
                                (212) 265-7200
                                (212) 265-1735 (facsimile)

# FINDINGS OF FACT AND DECISION

| | |
|---|---|
| Case Number: | 59055 |
| NYS Case Identifier Number: | 14249 |
| Student's Name: | N████ R████ |
| Date of Birth: | March 24, 1999 |
| District: | 3 |
| Hearing Requested By: | Parent |
| Date of Hearing: | March 23, 2005 |
| Hearing Officer: | Marc Weiner, Esq. |

Hearing Officer's Findings of Fact and Decision                                    1

Case No.   59055

## NAMES AND TITLES OF PERSONS WHO APPEARED

| Gary Mayerson | Attorney | Parent |
| ██████ ██ | Parent | |
| Lisa Frenette | ABA Consultant | Parent |
| Kathy-Ann Holstein | Chairperson Designee, CSE District 3 | Department of Education |

Hearing Officer's Findings of Fact and Decision

Case No.   59055

---

An impartial hearing was held on May 23, 2005, in the County of Kings, New York City for a student classified as having a disability pursuant to the Individuals with Disabilities Education Act (IDEA) 20 U.S.C. §1415.   The child N█████ R. was represented by Mr. Gary Meyerson and the District was represented by Ms. Kathy-Ann Holstein.   The Impartial Hearing Office assigned this case, case number 59055.   This hearing officer was appointed to preside over the case on April 19, 2005 pursuant to the IDEA, 20 U.S.C. 1415 (f) (1).   The closing date was June 8, 2005.

On April 7, 2005 Mr. Meyerson sent a letter to the Impartial Hearing Office requesting a hearing for the reinstatement of the case in that the Department of Education failed to act on a proposed settlement of the case.   In the original case it was claimed the child was diagnosed with PDD(NOS), an autism disorder and requested reimbursement for services for the school year 2003-2004 including the summer of 2004.   The reimbursement is for the cost of replacement of Applied Behavioral Analysis (ABA) services by an agency, Incidental Behavioral Intervention (IBI) Associates, starting in January 2004 through the summer of 2004.   The student is a "12 month student" under the then current Individualized Education Program (IEP).

The letter presented background information.   Mr. Meyerson stated that the IEP challenged was the IEP written pursuant to a conference held on June 24, 2003. Although, at that meeting, N█████s continued attendance at the Central Park Early Learning Center (CPELC) for the 2003-2004 school year was approved.   Additional support---a 1:1 aide for twenty hours per week was also approved.   The child's extended day ABA program of twenty hours per week was continued.   Thus the child was approved for forty hours of 1:1 ABA support.   (Although the original request was for forty hours a week, 20 + 20, the IEP for June 24, 2003 states special class 5 hours a day for 5 days a week with 1:1 aide.   Therefore the number of hours a week with the 1: 1 aide is 25 hours and not 20 hours, for a total of 45 hours.)

It is the contention of the parents through their attorney that the Theracare agency that was providing the extended day services was "substandard and inadequate". Additionally the school 1:1 ABA support aide for the child was "not appropriately trained in ABA or autism" and therefore that service provider did not meet the necessary mandated requirements.

Case No.   59055

---

## ISSUE

In the Burlington/Carter cases (School Committee of Burlington v. Department of education of Mass., 471 U.S. 359 [1985] and Florence County School District Four v. Carter by Carter, 114 S.Ct. 361 [1993]) it has been held that to receive reimbursement for either tuition or services the parents must meet a three-prong test. The parents must show that the Committee of Special Education (CSE) failed to provide the child with a free and appropriate public education (FAPE)---first prong; that the placement by the parents or the services obtained by the parents was appropriate under the IDEA, meeting the educational needs of the child---second prong, and the third prong; equitable considerations favor the parents and reimbursement.

## DISTRICT'S POSTION

The District conceded at the hearing the first and third prong.

## PARENT'S POSITION

It was the parents' contention that the services administered for her child by the Theracare agency and the aide provided by the school did not meet the criteria for FAPE and N████s educational needs and the services provided by IBI was appropriate.

The first witness for the parents was Lisa Frenette. The witness is employed by her agency, IBI Associates and has been in the field of ABA for fourteen years. According to the witness, Theracare was to provide twenty hours of ABA a week but in fact they were only providing twelve to fourteen hours a week. IBI was hired by the parents because of their dissatisfaction with Theracare which included their daughter not making progress and behavior issues that were not being addressed by Theracare. According to the witness her colleagues were not able to start working with the child until they "extinguished" the behaviors that were built up over the prior months. When IBI appeared on the scene the child was manifesting explosive tantrum behavior. The therapists began by identifying and analyzing the behaviors and only after that, were they able to put together a treatment plan. The child was not able to sit in a chair without falling off or running away.

The witness stated that the 1:1 ABA aide from the CPELC was to be for twenty-five hours as a mandated shadow. (The parents are requesting 50 hours a week reimbursement for the services of IBI that would include the mandated 45 hours plus 5

Case No.   59055

hours of consultation, team meetings and clinics.)  IBI took over the services that the CPELC aide was providing in the school and provided twenty-five hours of ABA services a week, a shadow, with their own therapist.  In regard to the additional five hours provided by IBI, beyond the consultations and clinics, IBI "entered N████ social groups we conduct twice a week in our office...The group has two professionals from our group running it so N████ has some shadowing experience.  So her exposure to typically developing kids has increased so we give that as well as a school that's typically developing school on the east side and she does a gym class there with a group..." (Tr. at 23)

The IBI professionals worked on the child's language issues and her toilet training and corrected the behavioral areas that were not addressed by the prior providers. According to the witness, N████ has made significant improvements against objective criteria.  Therecare failed in providing a school-home program and contacted or worked with any of the teachers from N████s day school program.  IBI provides clinics that are part of their program for the clients.  Once a month, on a Saturday, the team sits and discusses the child's program, progress and any new programming that may aid the team in working with their client.  The team has worked on providing generalization skills to N████, skills that N████ did not possess prior to their intervention.  IBI in working with N████ provide help with developing the necessary living skills and much of this work is done in the child's home.

The second witness to testify was the child's mother, H███F.  Ms. F. testified that IBI's first day with working with N████ was January 31, 2004.  IBI has never missed a day with N████ and has always been able to provide coverage if a therapist is out sick or has an emergency.  The work that IBI has accomplished with N████ is remarkable.

## DECISION

A Department of Education may be required to pay for educational services obtained for a student by his or her parent, if the services by the Department of Education were inadequate or inappropriate, the services selected by the parent were appropriate and equitable considerations support the parent's claim.  The failure of a parent to select a

Case No.   59055

program known to be approved by the state in favor of an unapproved option is not itself a bar to reimbursement (Burlington/Carter).

The District conceded the first and third prongs of the Burlington/Carter tests. The District concedes that the services originally provided by Theracare and the school aide were not appropriate.    The District concedes the third prong, equitable considerations.  Therefore the only issue is the second prong, whether or not the service provider hired by the parent provided appropriate services.

I find that the testimony of Ms. Frenette in describing the services they provided for N███ during the period from January 31, 2004 through the summer of 2004 was credible.  The witness provided expert testimony on the therapeutic plan that her agency laid out for the child and the work that had to be undone before they were able to commence their own treatment.  I find that IBI has made significant progress with the child and the services provided were appropriate and meet the second prong of the Burlington/Carter cases.  I therefore order the District to reimburse the parent for the services of IBI during the period that ran from January 31, 2004 to the last day of services provided for during the summer of 2004.  I find that although the child was mandated for 45 hours of ABA that the additional 5 hours a week was necessary and appropriate. Therefore the reimbursement shall cover 50 hours of services.

Dated:   June 21, 2005

*Marc Weiner (DS)*

MARC WEINER, ESQ.
Impartial Hearing Officer

MW:ds

Case No.   59055

---

**PLEASE TAKE NOTICE**

Within 35 days of the date of this decision, the parent and/or the New York City Department of Education has a right to appeal the decision to the State Review Officer of the New York State Education Department under Section 4404 of the Education Law and the Individuals with Disabilities Education Act.

"The notice of intention to seek review shall be served upon the school district not less than 10 days before service of a copy of the petition for review upon such school district, and within 25 days from the date of the decision sought to be reviewed. The petition for review shall be served upon the school district within 35 days from the date of the decision sought to be reviewed. If the decision has been served by mail upon petitioner, the date of mailing and the four days subsequent thereto shall be excluded in computing the 25- or 35-day period." (8NYCRR279.2[b]) Failure to file the notice of intention to seek review is a waiver of the right to appeal this decision.

Directions and sample forms for filing an appeal are included with this decision. Directions and forms can also be found in the Office of State Review website: www.sro.nysed.gov/appeals.htm.

Case No.   59055

_____

## DOCUMENTATION ENTERED INTO RECORD

| | | |
|---|---|---|
| 1. | Evaluation by McCarton Center, 10/22, 10/29/02, 8 pp. | Parent |
| 2. | IBA Session Observation, 1/25/02, 4 pp. | Parent |
| 3. | OT Progress Report, 3/3/03, 2 pp. | Parent |
| 4. | Memo from Chairperson, District 3, 6/24/03, 1 p. | Parent |
| 5. | IEP, 6/24/03, 22 pp. | Parent |
| 6. | Letter, 1/16/04, 1 p. | Parent |
| 7. | Behavioral Observation, 1/20, 1/25/04, 9 pp. | Parent |
| 8. | Letter, 1/23/04, 1 p. | Parent |
| 9. | Demand for Due Process, 2/5/04, 3 pp. | Parent |
| 10. | Progress Report, 5/6/04, 3 pp. | Parent |
| 11. | Demand for Due Process-Reinstatement, 7/4/05, 4 pp. | Parent |
| 12. | Behavioral Objectives by IBI, Undated, 2 pp. | Parent |
| 13. | Verbal Behavioral Program, Undated, 10 pp. | Parent |
| 14. | Graphics by IBI, Undated, 12 pp. | Parent |
| 15. | Lisa Frenette's Resume, Undated, 1 p. | Parent |
| 16. | John Distasio's Resume, Undated, 2 pp. | Parent |



## The University of the State of New York

### The State Education Department
### State Review Officer

No. 05-073

**Application of the NEW YORK CITY DEPARTMENT OF EDUCATION for review of a determination of a hearing officer relating to the provision of educational services to a child with a disability**

**Appearances:**

Michael Best, Special Assistant Corporation Counsel, attorney for petitioner, Hilary Steuer, Esq., of counsel

Mayerson & Associates, attorney for respondent, Gary S. Mayerson and Christina D. Thivierge, Esqs., of counsel

### DECISION

Petitioner, the New York City Department of Education, appeals from the decision of an impartial hearing officer which found that it failed to offer an appropriate educational program to respondent's daughter and ordered it to reimburse respondent for her daughter's applied behavioral analysis (ABA) program, up to 50 hours per week, by a private provider from January 2004 through summer 2004. The appeal must be sustained in part.

At the outset, a procedural matter must be addressed. Respondent asserts that the petition was improperly served. The State Review Officer has sole discretion to reject documents that do not comply with the Regulations of the Commissioner of Education (8 NYCRR 279.8[a]).

Although state regulations require personal service, petitioner improperly served respondent with the petition by overnight mail (8 NYCRR 275.8). There is no indication in the record that respondent consented to such service. Nevertheless, I find that respondent effectively responded to petitioner's allegations in a timely manner upon receipt of the petition and I will not dismiss the petition in this case for improper service (Application of the Bd. of Educ., Appeal No. 04-085; Application of a Child with a Disability, Appeal No. 04-084; Application of a Child with a Disability, Appeal No. 02-009; Application of a Child with a Disability, Appeal No. 01-055; Application of a Child with a Disability, Appeal No. 93-2). However, I remind petitioner of the practice requirements of Part 279 of the Commissioner's Regulations and caution that failure to comply with the personal service requirements may result in the dismissal of a petition (Application of the Bd. of Educ., Appeal No. 01-048).

The purpose behind the Individuals with Disabilities Education Act (IDEA) (20 U.S.C. §§ 1400 - 1487)[1] is to ensure that students with disabilities have available to them a free appropriate public education (FAPE) (20 U.S.C. § 1400[d][1][A]).[2] A board of education may be required to reimburse parents for their expenditures for private special educational services obtained for a student by his or her parent, if the services offered by the board of education were inappropriate, the services selected by the parent were appropriate, and equitable considerations support the parent's claim (Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359, 370 [1985]; Florence County Sch. Dist. Four v. Carter, 510 U.S. 7 [1993]). In Burlington, the court found that Congress intended retroactive reimbursement to parents by school officials as an available remedy in a proper case under the IDEA (id.). "Reimbursement merely requires [a district] to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it developed a proper IEP" (Burlington, at 370-71).

On appeal, petitioner does not dispute the reasonableness of the cost of the required reimbursement and in fact conceded prongs one and three of the Burlington/Carter reimbursement test at the impartial hearing (Tr. pp. 8-9). Petitioner conceded that it did not offer a FAPE (prong one) and that equitable considerations, which include reasonableness of the cost, supported the parent's claim (prong three) (see Carter, 510 U.S. at 15-16; Burlington, 471 U.S. at 369-74). Petitioner also concedes that the private services obtained by the parent were appropriate (prong two). The issue raised on appeal by petitioner is whether the impartial hearing officer erred by ordering petitioner to reimburse respondent for the cost of the ABA services without explicitly stating that proof of payment for the services was required. In his decision, the impartial hearing officer, in finding that tuition reimbursement should be awarded to respondent, phrased the relevant order as follows: "I therefore order the District to reimburse the parent for the services of [the private provider] during the period that ran from January 31, 2004 to the last day of services provided for during the summer of 2004" (IHO Decision at p. 5). Petitioner requests that the impartial hearing officer's decision be set aside, or in the alternative, that the case be remanded for "completion of the evidentiary record."

An order by an impartial hearing officer for a district to pay costs for unapproved services is permissible only as an equitable remedy to allow parents to be retroactively reimbursed once they have obtained and paid for appropriate services (see 20 U.S.C. 1412[a][10][C][ii]; 34 C.F.R. § 300.403[c]; see generally Sch. Comm. of Burlington v. Dep't of Educ., 471 U.S. 359, 370-71 [1985]; A.A. v. Bd. of Educ., 196 F. Supp. 2d 259, 264 [E.D.N.Y. 2002]; Application of a Child with a Disability, Appeal No. 05-039, at n.7; Application of a Child with a Disability, Appeal No. 05-025, at n.1; Application of a Child with a Disability, Appeal No. 04-092; Application of the Bd. of Educ., Appeal No. 04-037).[3] To the extent that the impartial hearing officer's decision and order in the present case fails to reflect that proof of payment is to be submitted prior to reimbursement, the order is modified pursuant to my authority under New York Education Law § 4404[2]),[4] as detailed below.

Concerning respondent's claim for attorneys' fees, respondent is advised that such relief is beyond the scope of the State Review Officer's authority (Application of a Child with a Disability, Appeal No.03-067; Application of the Bd. of Educ., Appeal No. 03-012; Application of a Child with a Disability, Appeal No. 01-086), and can only be granted by a court of law (20 U.S.C. § 1415[i][3][B]).

I have considered petitioner's remaining contentions and I find them to be without merit.

**THE APPEAL IS SUSTAINED TO THE EXTENT INDICATED.**

**IT IS ORDERED** that the impartial hearing officer's decision is hereby modified to the extent that it held as follows: "I therefore order the District to reimburse the parent for the services of [the

private provider] during the period that ran from January 31, 2004 to the last day of services provided for during the summer of 2004" (IHO Decision at p. 5), and

**IT IS FURTHER ORDERED** that petitioner shall reimburse respondent for the cost of her daughter's ABA services provided by a private provider from January 2004 to the last day ABA services were provided to respondent's daughter during the summer of 2004, up to a maximum of 50 hours per week, within 60 days of respondent's submission of proof of such expenditures to petitioner.

Dated:    **Albany, New York**
          **September 7, 2005**                                    _____
                                                                   **PAUL F. KELLY**
                                                                   **STATE REVIEW OFFICER**

[1] On December 3, 2004, Congress amended the IDEA, however, the amendments did not take effect until July 1, 2005 (see Individuals with Disabilities Education Improvement Act of 2004 [IDEIA], Pub. L. No. 108-446, 118 Stat. 2647). Citations contained in this decision are to the statute as it existed prior to the 2004 amendments. The relevant events in the instant appeal took place prior to the effective date of the 2004 amendments to the IDEA, therefore, the provisions of the IDEIA do not apply.

[2] The term "free appropriate public education" means special education and related services that -

(A) have been provided at public expense, under public supervision and direction, and without charge;

(B) meet the standards of the State educational agency;

(C) include an appropriate preschool, elementary, or secondary school education in the State involved; and

(D) are provided in conformity with the individualized education program required under section 1414(d) of this title.

20 U.S.C. § 1401(8).

[3] In the present case, the transcript reflects that respondent in fact had proof of payment with her at the impartial hearing but that it was not entered into evidence (Tr. p. 67).

[4] Proof of respondent's expenditures for her daughter's private provider ABA services from January 2004 through summer 2004 was annexed to respondent's verified answer (Answer Ex. A). I note that petitioner has neither replied to nor objected to the additional documentary evidence served with respondent's answer, as permitted by 8 NYCRR 279.6.

## AMENDED FINDINGS OF FACT AND DECISION

| | |
|---|---|
| Case Number: | 104577 |
| Student's Name: | N██████ R█████████ |
| Date of Birth: | May 24, 1999 |
| District: | 3 |
| Hearing Requested By: | Parent |
| Dates of Hearing: | July 11, 2006<br>October 20, 2006<br>November 14, 2006 |
| Hearing Officer: | Ralph Pennington, Jr., Esq. |

Hearing Officer's Amended Findings of Fact and Decision                    1

Case No.   104577

---

NAMES AND TITLES OF PERSONS WHO APPEARED JUNE 11, 2006

| Gary Mayerson | Attorney, Law Offices of Gary Mayerson | Parent |
| ████ █████ | Parent | |
| Sondra Lucente | Speech/Language Pathologist | Parent |
| Lisa Frenette | Director of IBI Associates | Parent |
| Arsenio Paez | Physical Therapist | Parent |
| Suzanne Kaouris | Chairperson Designee, CSE, Region 10 | Department of Education |

NAMES AND TITLES OF PERSONS WHO APPEARED OCTOBER 20, 2006

| Randi Rothberg | Attorney, Law Offices of Gary Mayerson | Parent |
| Augusto C. Quiros | Chairperson Designee, CSE, Region 10 | Department of Education |

NAMES AND TITLES OF PERSONS WHO APPEARED NOVEMBER 14, 2006

| Gary Mayerson | Attorney, Law Offices of Gary Mayerson | Parent |
| Augusto C. Quiros | Chairperson Designee, CSE, Region 10 | Department of Education |

Hearing Officer's Amended Findings of Fact and Decision                                              2

Case No.  104577

---

**PARENT'S POSITION**

The parent contends that the New York City Department of Education(hereinafter referred to as "Department") has failed to offer the child an appropriate educational placement for the 2005-2006 school year.  The parent argues that no IEP was ever drafted for the subject school year; no program offered; and no placement ever made. The parent contends that she never received the May 24, 2005 IEP nor the Notice of recommendation from said IEP. Therefore, the parent argues that the most recent valid IEP is the IEP of June 24, 2003 (Exhibit B).

No CSE review was convened for the 2005-2006 school year.

The parent argues that the Department has failed to provide the student with a free appropriate education (FAPE). The parent unilaterally placed the student at the home based, intensive ABA program with related services. Therefore, the parent seeks to have the Department to reimburse her for her expenditure for the child's home based program and related services  for the 2005-2006 school year. Parent also seeks compensatory relief for occupational therapy that the student missed for the entire 2005-2006 school year.

The student currently receives the following ABA therapy services at home, and the noted related services (outside of the home):

-1:1 ABA therapy fifty hours per week with supervision;

-Speech and Language therapy, five times per week in sixty minutes sessions each, individually;

-Physical therapy, two per week in a thirty minute sessions each, individually.

**CITY OF NEW YORK DEPARTMENT OF EDUCATION'S  POSITION**

The Department presents little challenge, if any, as to the first prong of the Burlington/Carter test (T.5) The Department challenges the appropriateness of the home-based ABA program and contends that it is inappropriate; excessive number of hours; no objective standards to measure progress and the student has derived no trivial or educational benefit from said program. The Department does not consent to the third element of the Burlington/Carter standard.

Hearing Officer's Amended Findings of Fact and Decision                    3

Case No.  104577

---

**Evidence Presented:**

**On Behalf of the Department:**

The Department presents no testimonial evidence and relies primarily on documentary evidence.

**On behalf of the Parent:**

**Sondra Lucente, Speech/Language pathologist** , testified that she has an undergraduate degree from Loyola College in speech/language pathology and attended graduate school at Columbia University (T.6-7). She is New York State certified as a speech/language pathologist and licensed with the American Speech and Hearing Association (T.7). Said witness has taken some continuing education courses in autism (T.7-8). She has worked with about ten autistic children over the course of her career (T.8-9). She has worked with both higher and lower functioning students (T.9). She is currently employed at Rachel Fish Kaplan and previously worked with the New York City Department of Education (T.9-10). She began co-treating the subject student in September (T.11). The student presented with significant challenges in receptive and expressive language and with social skills (T.11). She also had difficulty with transition (T.12). Exhibit E lists the subject areas of deficits of the student (T.13).

Thereafter, said witness testified that the student continues to have deficits in a variety of areas (T. 14). With respect to receptive language, she uses a lot of repetition (T.16). Said student did present with interfering behaviors which were primarily verbal (T.20-21). This witness has communicated with the other service providers (T.22). She meets with the student five times per week in one hour sessions each (T.24). In her opinion, the student has made meaningful progress in her receptive language; expressive language; pragmatic language and social skills (T.24-25). Her most significant progress is in the naturalness of her interaction (T.25). She is better able to use complete sentences (T.25). In conclusion, she stated that the current services, in terms of frequency and duration, are appropriate and necessary for this student (T.29).

On cross examination, she testified that the student comes to her office and she sees her the same time each day (T.31). There was testimony given as to the goal of

Hearing Officer's Amended Findings of Fact and Decision                    4

Case No.   104577

lingual strength and range of motion (T.32).  She concluded with testimony as to how said goal was measured six months ago (T.33).

**Lisa Frenette, Director of IBI Associates,** testified that she received her bachelor's degree in 1987 at Marymount College (T.36). Her company offers SEIT services to students (T.36-37). From 1998-2002, she was the Director for Educational Intervention at the McCarton Center (T.37). Testimony was given as to her duties at the McCarton Center (T.37).  IBI Associates has five employees who are all trained in Applied Behavior Analysis (T.38).  Said witness and her staff have met the requirements, except for an exam, to receive certification in ABA (T. 40).

Her company began to provide services to the subject student in 2004 (T.41). Initially, SEIT services were offered within the school setting and currently in the home setting (T.40-41).

The student attends to mainstream gym classes, per week, which are part of her program (T.42). Also, the student receives two-three hours per day of socialization with developing peers (T.46).   Further, play dates are arranged both inside and outside of the home (T.46).

IBI Associates provides the parent with periodic progress reports (T.47). In September 2005, the student did present with the interfering behaviors of tantrums, biting and kicking (T.46). Said behaviors have been extinguished (T.48). Next, testimony was given as to the significance of generalization in any ABA program (T.49-50).  Said witness testified that this student is in need of the subject ABA program in her opinion (T.54).  Testimony was given as to how the student has made progress in a more natural setting (T.55-56).   Next, there was testimony as to how the student is learning independence (T.56-61).

The student receives between 48-49 hours of direct instruction (T.63). Testimony was given as to how attends the clinics and what is discussed (T.64-65).  The hourly rate of her associates is $130.00 per hour (T.66) and her rate is $160.00 per hour for direct instruction and $140 per hour for clinic or co-treat time (T.67).  In her opinion, the student has made both academic and behavioral progress (T.68).  Recently, they have

started implementing new academic skills, including the handwriting without fears program (T.68). She concluded that the student's family and other caregivers have been involved in this program (T.72).

On cross examination, said witness testified that John D. has thirteen years of experience in ABA and Analisa has over fifteen years of experience (T.73). Both have masters degrees in special education (T.74). Socialization skills are developed on a daily basis (T.75). Testimony was given as to the mainstream gym class (T.76-77). Next, testimony was given as to the student's schedule (T.79-80).

**Arsenio Perez, Doctor in Physical Therapy,** testified that he has a doctorate degree in physical therapy and is licensed as a physical therapist in the State of New York (T.82). He has worked in said field for ten years and has worked with two-three dozen children diagnosed within the autism spectrum disorder (T.83). Said witness has seen the student two times per week for forty-five minute sessions each (T.84). His rate is $126.00 per session (T.84).

His primary focus is the student's lack of strength and control in her lower trunk (T.86). The student has made progress with her coordination in walking; running; stair climbing; and stair descent (T.86). The student still suffers from atypical posture and motor planning (T.87). He opined that the student has made measurable progress and she needs to continue with the physical therapy (T.87-88). Cross examination of this witness was limited.

**F█████ F████ parent,** testified that there was no general education teacher at the May 24, 2004 CSE review (T.92). The student first began to attend the mainstream gym class within the last two years (T.93). The parent has never seen the IEP of May 24, 2005 before (T.94). The parent never received a copy of said IEP in the mail (T.95). Her daughter was still exhibiting interfering behaviors in 2004 and a one-to-one paraprofessional had been recommended (T.97). At the subject CSE review meeting, there was no discussion of methods of measurement as to the student's progress (T.98). Said witness stated that she never received a final notice of recommendation (T.100). Further, the parent never received an IEP for the 05-06 school

year (T.101-102).  The parent has continued to expend monies for the services provided to the student through her program (T.102-103).

On cross-examination, said witness testified that aware of the Department's recommendation but did not agree with it(T.106).  She never received an IEP to agree with or object to (T.106). On re-direct examination, the witness stated that there was no decision-making process at the subject CSE review (T.110).

Further, on re-direct examination, which was conducted on November 14, 2006 and characterized, on the record, as direct examination, said witness testified that she did not receive any communications from the District, during the summer of 2005, to set up an IEP meeting (T.139).  In fact, the entire school year past and there was no development of an IEP or offer of a placement (T.140).

Next, the witness gave testimony as to the home program that was developed for the student (T.141-143).  She has been unable to hire an occupational therapist whom could work into the student's schedule (T.143).  The student has made progress when comparing the 04-05 program to the 05-06 program (T.144).  The student still has some interfering behaviors but that has been decreased drastically (T. 145). An example was given as to the change in the student's behavior (T.146-147). Her adaptive living skills have improved and the witness gave an example as to her brushing her teeth independently (T.147-149).  Hence, there was testimony as to parent training and counseling (T.149-151). In her opinion, the student did make significant progress during the 05-06 school year (T.152).

On cross-examination, said witness provided details as to the student's activities and schedule on a daily basis (T.153-163).  Normally, the various providers work on an individual basis except when they co-treat (T.163-166). Testimony was given as to her holiday activities, in particular with an example given of what occurred during last Thanksgiving (T.166-170; 173-177).  Said witness stated that the student's adaptive skills have improved (T.171). Next, there was testimony as to the student's fluidity with a specific example as to a bar mitzvah given (T. 177-179). Next, testimony was given as to why she has been unable to obtain occupational therapy (T179-180). IBI Associates was

Hearing Officer's Amended Findings of Fact and Decision                    7

Case No.   104577

---

the only service who provided ABA therapy to the student during the 2005-2006 school year (T.189).

On redirect examination, said witness testified to the difficulty a parent faces when trying to obtain services for an autistic student (T.190-191).

On recross-examination, said witness reiterated that she was unable to find an occupational therapist (T.194).

## RELEVANT EVIDENCE ENTERED INTO THE RECORD

### Individualized Education Program of May 24, 2004(Exhibit # 1):

The IEP classifies the student as autistic and recommends a special class in a specialized school.   A class staffing ratio of 6:1:1 is recommended.   Student was to receive the services of a full-time paraprofessional. The following recommended related services were: speech and language therapy two times per week in thirty (30) minute sessions each, individually; physical therapy two times per week, individually, in thirty (30) minute sessions each and occupational therapy two times per week, individually, in thirty (30) minute sessions each. The student was to receive special education transportation and placed in a twelve month program.

### Individualized Education Program of June 24, 2003(Exhibit B):

The IEP classifies the student as a preschool student with a disability and recommends a special class for five hours per day and SEIT 20 hours per week. A class staffing ratio of 10:1:3 is recommended.. Student was to receive the services of a one-to-one aide. The following recommended related services were: speech and language therapy two times per week in thirty (30) minute sessions each, individually; speech and language therapy five times per week, in sixty (60) minute sessions each, individually, in a separate location; physical therapy two times per week, individually, in thirty (30) minute sessions each and occupational therapy two times per week, individually, in thirty (30) minute sessions each. The student was to receive special education transportation and placed in a twelve month program.

Hearing Officer's Amended Findings of Fact and Decision                    8

Case No.   104577

---

**Physical Therapy Report of Dr. Arsenio Paez dated March 11, 2006(Exhibit C):**

Dr. Paez notes that the student has decreased strength and control of movement in her pelvis; gluteals; and the muscles of her lower trunk. She runs with decreased coordination. He recommends continued physical therapy to address her sensory motor and development needs with an increase in the length of the sessions to forty-five(45) minutes each.

**Progress Report from IBI Associates of February 1, 2006(Exhibit D):**

Said report notes that the student receives fifty-two (52) hours of ABA per week, seven (7) days per week in a home school program. The student had presented with explosive tantrums. Her most aggressive behavior was scratching.  She had difficulty with transitioning from place to place. A behavior plan was created and implemented. Her ability to attend was her greatest improvement in the past six months.

In summary, the student demonstrates a severe speech and language delay; delayed graphomotor skills; some non-compliant behaviors; idiosyncratic behaviors and delayed social skills. She requires the subject program to continue to address her specific needs for a long period of time.

Further, Department presented a proposed exhibit # 3(copy of the Demand for Due process dated October 5, 2005 with a time-stamp of April 27, 2006), post-hearing, which was objected to by the parent's attorney. Based upon said objection and due to the lack of relevance, this hearing officer sustained said objection and did not enter the proposed exhibit into the record. Further, said document is already part of the record as Exhibit A.

**<u>FINDINGS AND CONCLUSIONS:</u>**

I find that the evidence clearly establishes that the student is a seven (7) year eight (8) month old student who was classified as autistic. She was diagnosed with autism spectrum disorder in 2002 (Exhibit E). She presents with severe speech and language delay; delayed graphomotor skills; some non-compliant behaviors; idiosyncratic behaviors and delayed social skills. The record also establishes that a CSE review was held on May 24, 2004 resulting in the IEP of May 24, 2004.

Hearing Officer's Amended Findings of Fact and Decision                    9

Case No.   104577

_____

Said IEP - the IEP classifies the student as autistic and recommends a special class in a specialized school. A class staffing ratio of 6:1:1 is recommended. Student was to receive the services of a full-time paraprofessional. The following recommended related services were: speech and language therapy two times per week in thirty (30) minute sessions each, individually; physical therapy two times per week, individually, in thirty (30) minute sessions each and occupational therapy two times per week, individually, in thirty (30) minute sessions each. The student was to receive special education transportation and placed in a twelve month program.

The parent previously challenged said IEP which led to the impartial hearing of March 23, 2005(Exhibit O) and the SRO decision No. 05-073 (Exhibit P). Said decision found that the Department failed to provide FAPE and tuition reimbursement was awarded to the parent. The SRO affirmed said impartial hearing decision.

Thereafter, the record establishes that the Department did not create an IEP for the following 2005-2006 school year. The parent credibly testified that no CSE review meeting was ever held for the subject school year. She never received any communication from the Department as to a CSE review. No IEP was ever created; no program was offered and no placement was ever made for the 2005-2006 school year. Further, the Department does not present any witnesses or evidence to rebut this issue.

I find that the record is quite clear that no program or placement was ever offered to the parent for the subject school year. Further, no IEP was ever created for the 2005-2006 school year.

Nonetheless, prior to addressing the substantive issue, I must review the procedural issue of whether the CSE review team was comprised of the proper team members. However, under these circumstances, there no CSE review was ever held so I am unable to procedurally review a non-existent CSE review team.

Therefore, I must find that the Department has failed to meet its burden of proof due to an IEP which is invalid and void due to the lack of a duly comprised CSE review team pursuant to federal and state regulatory requirements.   Hence, I order that the

Hearing Officer's Amended Findings of Fact and Decision　　　　　　　　10

Case No.　104577

_____

Department reconvene a CSE meeting with the duly comprise team members and create a valid IEP for the subject student.

The Board of Education may be required to pay for educational services obtained for a child by the child's parents, if the services offered by the Board of Education were inadequate or inappropriate; the services selected by the parents were appropriate; and equitable considerations support the parent's claim. (School Committee of the Town of Burlington v. Department of Education, Massachusetts, 471 U.S. 359 [1985]). The Board of Education bears the burden of demonstrating the appropriateness of the program which its CSE has recommended (Matter of Handicapped Child, 22 Ed. Dept. Rep.487; Application of a Child with a Handicapping Condition, Appeal No. 92-1; Application of a Child with a Handicapping Condition, Appeal No 93-9).

Further, pursuant to Florence County , et al. v. Carter 510 U.S. 7, 114 S.Ct. 361, the principles of the Burlington test apply and reimbursement may not be barred to a parent who chooses a private school to provide a free appropriate education for their child.

Here, the Board has failed to meet its burden of proof because there was no program and/or placement offered to the student for the 2005-2006 school year. Also, said IEP was no-existent and invalid. Furthermore, the Department has not sufficiently refuted the first element of the Burlington/Carter standard (T.5).

The parent bears the burden of proof with regard to the appropriateness of the services they seek for the student during the 2004-2005. (Application of a Child with a Disability, Appeal No. 94-29; Application of the Board of Education of the Monroe-Woodbury CSD, Appeal No. 93-34; Application of a Child with a Disability, Appeal No. 95-57). In order to meet that burden the parent must demonstrate that the services were proper under the Individuals with Disabilities in Education Act (IDEA, 20 United States Code sec. 1415(F)(1); (School Committee of the Town of Burlington v. Department of Education, Massachusetts, Supra 370).

Further, under Frank G v. Board of Education of Hyde Park 2006 U.S. App. LEXIS 19029 (2nd Circ. 2006), the Court held that as to prong II of the Burlington/Carter

Hearing Officer's Amended Findings of Fact and Decision                                11

Case No.   104577

test, as to "appropriateness", the services for which reimbursement is being sought need not be perfect, meet all of the child's needs, or even be delivered in the least restrictive environment.

In the case before me, I find that the parent has met her burden and has established that the home-based program; ABA therapy and the related services are appropriate for this student. The record credibly establishes that the student has made meaningful progress in the current home-based program.

Further, the witnesses presented by the parent were all credible and also established that the student is in need of and requires the ABA therapy; the speech and language therapy provided, and the physical therapy. The record establishes that the student suffers delays and deficits, noted above, which are being addressed by both the ABA therapy and the related services. The Department has presented little, if any, to rebut or refute the appropriateness of said program. The Department argues that said program is not appropriate; that there is no objective evidence to measure the child's progress; and that said program consists of excessive hours.  I do not agree with the Department's argument and there is sufficient persuasive evidence presented by the parent to justify the ABA program under prong II of the <u>Burlington/Carter test.</u>

The parent has met the second prong in establishing the appropriateness of the home-based program.

I find further that equitable considerations support the parent's claim. The record shows that the mother has cooperated with the process and has attended prior meetings including the CSE review meeting in May 2004. There is nothing in the record to indicate that she has not been participating during the process.

Furthermore, the Department failed to offer a specific program and/or placement and did not create an IEP for the subject school year. Under these circumstances, the equities sway towards the parent.

Therefore, I find that the equities favor the parent and the parent has met the third element of the Burlington/Carter standard.  Hence, I find that the parent is entitled to reimbursement for IBI services provided during the 2005-2006 school year.  The parent

Hearing Officer's Amended Findings of Fact and Decision                               12

Case No.  104577

_____

has met the legal elements of the <u>Burlington/Carter</u> standard. The student was mandated for fifty (50) hours of ABA, per week, as necessary and appropriate (the number of hours noted and requested in parent's exhibit A). Sufficient invoices and copies of cancelled checks, support said finding (Exhibits F-K). Further, said invoices for the ABA therapy services and the related services of speech and language therapy and physical therapy, for the school year 2005-2006 be either paid directly to the appropriate service provider or reimbursed to the parent upon presentment of bills, invoices, and/or cancelled checks to the Department.

Again, the Department to reimburse the parent for the IBI Associates services for the 2005-2006 school year, including the summer of 2006, and for the costs of the related services providers upon presentment of bills, invoices and or cancelled checks to the Department.

Pursuant to the record, in particular exhibit D-1, the District had approved a twelve (12) month program for the subject student. Thus, the parent is entitled to reimbursement for IBI Associates services provided to the student during the summer 0f 2006 as noted above.

Further, the parent seeks compensatory relief as to occupational therapy. The parent was unable to obtain the services of an occupational therapist, primarily due to the student's intensive schedule, for the entire 2005-2006 school year. The prior IEP of May 24, 2004, does recommend occupational therapy two times per week in thirty minute sessions each, individually.  On the basis of the record, I award compensatory relief for the hours of occupational therapy that the student missed for the entire 2005-2006 school year.

Lastly, the Department to reconvene a CSE meeting with an appropriate team to create a valid IEP.

It is hereby:

**ORDERED,**

The Department to reimburse the parent for the home-based program which includes the IBI services provided during the 2005-2006 school year, including the

Hearing Officer's Amended Findings of Fact and Decision                                    13

Case No.  104577

_____

summer of 2006.  The student was mandated for fifty (50) hours of ABA, per week,  as necessary and appropriate. Further, parent to be reimburse for the related services of speech and language therapy and physical therapy, for the school year 2005-2006, be either paid directly to the appropriate service provider or reimbursed to the parent upon presentment of bills, invoices, and/or cancelled checks to the Department.

Department to provide an RSA to parent for said services or reimburse the parent for award of compensatory relief for the hours of occupational therapy that the student missed for the entire 2005-2006 school year. Student should have received two thirty minutes sessions each, individually, per week multiplied by the number of weeks for the entire school year. If parent obtains a private provider for such services, then Department to either pay directly to appropriate service provider or reimburse parent upon presentment of bills, invoices and/or cancelled checks to the Department for occupational therapy services.

Lastly, the Department to reconvene a CSE meeting with an appropriate team to create a valid IEP for the subject student.

Dated: March 5, 2007

**SO ORDERED,**

_Ralph Pennington RPJ_

RALPH PENNINGTON, JR., ESQ.
Impartial Hearing Officer

RPJ:ds

Hearing Officer's Amended Findings of Fact and Decision                     14

Case No.  104577

---

**PLEASE TAKE NOTICE**

Within 35 days of the date of this decision, the parent and/or the New York City Department of Education has a right to appeal the decision to the State Review Officer of the New York State Education Department under Section 4404 of the Education Law and the Individuals with Disabilities Education Act.

"The notice of intention to seek review shall be served upon the school district not less than 10 days before service of a copy of the petition for review upon such school district, and within 25 days from the date of the decision sought to be reviewed.  The petition for review shall be served upon the school district within 35 days from the date of the decision sought to be reviewed.  If the decision has been served by mail upon petitioner, the date of mailing and the four days subsequent thereto shall be excluded in computing the 25- or 35-day period." (8NYCRR279.2[b])  Failure to file the notice of intention to seek review is a waiver of the right to appeal this decision.

Directions and sample forms for filing an appeal are included with this decision.  Directions and forms can also be found in the Office of State Review website: www.sro.nysed.gov/appeals.htm.

Hearing Officer's Amended Findings of Fact and Decision                    15

Case No.    104577

## DOCUMENTATION ENTERED INTO RECORD JUNE 11, 2006

| A. | Demand for Due Process, 10/5/05, 3 pp. | Parent |
|----|----|----|
| B. | New York City Board of Education IEP, 6/24/03, 12 pp. | Parent |
| C. | Physical Therapy Report by Arsenio Paez, Jr., MS, TT, CEIS, 3/11/06, 3 pp. | Parent |
| D. | Progress Report by I.B.I. Associates – Lisa Frenette, M.S., Ed., 2/1/06, 4 pp. | Parent |
| E. | Speech and Language Progress Report by Rachel Fisch-Kaplan, MS, CCC-SLP, PC, 1/16/06, 4 pp. | Parent |
| F. | Physical Therapy Invoices, Affidavits, and Cancelled Checks, 11/5/06, 9 pp. | Parent |
| G. | Speech and Language Therapy Invoices, Affidavits, and Cancelled Checks, 9/5/05, 25 pp. | Parent |
| H. | ABA Therapy & SEIT Invoices, Affidavits, and Cancelled Checks, 9/5/05, 28 pp. | Parent |
| I. | Speech and Language Provider's Affidavit, Invoices, and Proof of Payment, 1/06 – 06/06, 28 pp. | Parent |
| J. | Physical therapy Provider's Affidavit, Invoices, and Proof of Payment, 03/06 – 05/06, 9 pp. | Parent |
| K. | ABA Provider's Affidavit, Invoices, and Proof of Payment, 01/06 – 05/06, 32 pp. | Parent |
| L. | Resume – Dr. Arsenio Paez, Jr., PT, DPT, MS, CEIS, 3 pp. | Parent |
| M. | Resume – Sondra G. Lucente, MS, CCC-SLP, 1 p. | Parent |

Hearing Officer's Amended Findings of Fact and Decision      16

Case No.  104577

| | | |
|---|---|---|
| N. | Resume – Lisa Frenette, M.S., E.D., 1 p. | Parent |
| O. | Decision #59055, 6/21/05, 9 pp. | Parent |
| P. | State Review Officer No. 05-073, 4 pp. | Parent |
| 1. | IEP | Department of Education |
| 2. | Final Notice | Department of Education |

## DOCUMENTATION ENTERED INTO RECORD OCTOBER 20, 2006

| | | |
|---|---|---|
| B. | (Revised to reflect proper page number) IEP, 6/24/03, 22 pp. | Parent |
| Q. | Letter from Gary Mayerson to Ralph Pennington, 9/13/06, 2 pp. | Parent |

## FINDINGS OF FACT AND DECISION

Case Number:            106315

Student's Name:         N███████ R████████

Date of Birth:          May 24, 1999

District:               3

Hearing Requested By:   Parent

Date of Hearing:        November 28, 2006
                        November 29, 2006
                        December 22, 2006
                        January 18, 2007
                        February 6, 2006

Hearing Officer:        Michael Kennedy Lloyd, Esq.

Hearing Officer's Findings of Fact and Decision                                                1

Case No. 106315

---

## NAMES AND TITLES OF PERSONS WHO APPEARED NOVEMBER 28, 2006

| | | |
|---|---|---|
| Gary Mayerson | Attorney | Parent |
| ▮▮▮ ▮▮ | Mother | |
| Sandra Lucente | Speech Pathologist | Parent |
| Lisa Frenette | ABA Consultant | Parent |
| Augusto C. Queros | Chairperson Designee, CSE, District 3 | Department of Education |

## NAMES AND TITLES OF PERSONS WHO APPEARED NOVEMBER 29, 2006

| | | |
|---|---|---|
| Gary Mayerson | Attorney | Parent |
| ▮▮▮ ▮▮ | Mother | |
| Lisa Frenette | ABA Consultant | Parent |
| Augusto C. Queros | Chairperson Designee, CSE, District 3 | Department of Education |

## NAMES AND TITLES OF PERSONS WHO APPEARED DECEMBER 22, 2006

| | | |
|---|---|---|
| Gary Mayerson | Attorney | Parent |
| ▮▮▮ ▮▮ | Mother | |
| Lisa Frenette | ABA Consultant | Parent |
| Augusto C. Queros | Chairperson Designee, CSE, District 3 | Department of Education |

## NAMES AND TITLES OF PERSONS WHO APPEARED JANUARY 18, 2007

| | | |
|---|---|---|
| Gary Mayerson | Attorney | Parent |
| ▮▮▮ ▮▮ | Mother | |
| Sandra Lucente | Speech Pathologist | Parent |
| Lisa Frenette | ABA Consultant | Parent |
| Augusto C. Queros | Chairperson Designee, CSE, District 3 | Department of Education |
| Deborah Goldman | Autistic Coach District 75 | Department of Education |

## NAMES AND TITLES OF PERSONS WHO APPEARED FEBRUARY 6, 2007

| | | |
|---|---|---|
| Randi Rothberg | Attorney | Parent |
| ▮▮▮ ▮▮ | Mother | |
| Arsenio Paez | Physical Therapist | Parent |
| Augusto C. Queros | Chairperson Designee, CSE, District 3 | Department of Education |
| Katherine Deats | Occupational Therapist | Department of Education |

Case No. 106315

_____

The matter of N███████R. came before me on November 28, 2006. The date of my designation as Impartial Hearing Officer, pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §1415(f)(1) was September 1, 2006. The hearing was convened at the request of the parent, which was received on September 1, 2006. The hearings were held on November 28, 2006, November 29, 2006, December 22, 2006, January 18, 2007 and February 6, 2007. The parties made a request to submit post-hearing memoranda. The compliance date is extended; the record close date is March 2, 2007. Appended to the record are the lists of persons in attendance and of documents submitted into evidence.

Parent has requested this Hearing seeking; (1) reimbursement for parent developed non-school based educational agency program for the 2006-2007 academic year (12 month program) which consists of (a) 5 hours per week of Speech and Language Therapy (b) 2 weekly 45 minute sessions of Physical Therapy (c) 52 hours per week of Applied Behavioral Analysis services (ABA); (2) compensatory Occupational Therapy 2 weekly 30 minute sessions as recommended on the Individualized Education Program (IEP) of October 11, 2006 (Ex. C-11); and (3) parent training/team coordination 2 hours per week.

BACKGROUND

This student is currently 7.8 years old with a diagnosis of autism, which is undisputed between the parties. This student is known to the New York City Department of Education (NYCDOE) and has been the subject of a prior Impartial Hearing (Ex. F) and an appeal Application of the Board of Education Appeal No. 05-073 (Ex. G) which affirmed the appropriateness of a similar parent developed educational services program as of September 2005. This student has not participated in a formalized school setting due to the severity of its handicapping condition. The student manifests tantrums, self-directed behaviors and aggression toward adults and peers. Said episodes are reported to be occurring with less frequency recently in the past year yet the parent continues to express concern for the safety of other students if placed in a classroom setting at this time. The ABA therapist, the speech therapist, and physical therapist each concur with the parent's representations concerning the student's formal classroom readiness.

Case No. 106315

_____

The NYCDOE has conceded both prong one and prong three (Tr. p. 45-46) of the _Burlington/Carter analysis_ (School Committee of the Town of Burlington v. Department of Education, Massachusetts, 471 U.S. 359 (1985); Florence County School Dist. Four v. Carter, 510 U.S. 7 [1993]) but vigorously contests prong two as to the appropriateness of the parent designed program (which does not provide for a classroom placement) under the theory that "all children above the age of five go to school." (Tr. p. 537). It is further represented that the parent's failure to provide the services of an occupational therapist to address the student's developmental issues to be a fatal flaw in the parent's self designed program (Tr. p. 623-624).

THE POSITION OF THE PARTIES

The position of the parent is that this is the same program reviewed and approved in Application of the Board of Education Appeal No. 05-073 (Ex. G) for the same child 1 and ½ years later. The underlying prior Impartial Hearing Decision (Ex. F-4) also contained a concession of prongs 1 and 3 by the NYCDOE acknowledging a cooperative parent and the inability of the agency to deliver a free and appropriate public education (FAPE). The parent identifies the current interfering behaviors as diminishing but the child is not as of yet ready to be in a classroom setting of any size. Parent maintains that the NYCDOE personnel have been unable to test the student, not accurately conducted a functional behavior analysis nor created an effective behavioral intervention plan that addresses the safety of the student or the students with which she may be grouped (Tr. pgs. 48-51). Parent has continued a program of services (with adjustments as milestones are met) which are essentially the same as previously approved by the State Review Officer and merely are continued in response to the student's current handicapping condition. Parent represents that she is interested in enrolling the student in a classroom environment as soon as student can acclimate effectively within that setting.

The NYCDOE's position is that this is the third consecutive year that the parent has substituted these services in lieu of placing the student in a classroom environment. The NYCDOE maintains that the classroom is where socialization skills can be best learned and the NYCDOE operates on the philosophy that "it's not appropriate for a child seven and a half year old not to be in school" and "its part of our society that students

Case No. 106315

from 5 to 18 years old go school". According to representations made by the NYCDOE autism supervisory personnel any educational program that does not include a classroom environment is inappropriate (Tr. p. 541-542).

THE PARENT'S CASE

The parent relies upon the determination of the appropriateness of this program made by the prior impartial hearing decision that was ratified by the State Review Office. Given the continuing manifestations by the student of behaviors that make her dangerous to peers the parent (Tr. pgs. 168-170) and the service providers convincingly testified that until such behaviors are further minimized or eliminated a classroom setting is inappropriate. While these behaviors are noted to be diminishing (often being replaced by other inappropriate behaviors) they remain within the student's repertoire and are targeted for eradication and correction by her current service providers (Tr. p. 341-342). Parent desires an inclusive classroom educational program however the conditions/ behaviors of the student make it imprudent to implement same at this time although incremental social integration is within her weekly schedule (gym with normal peers). The student has integrated within her program appropriate socialization opportunities as her handicap permits. The services and daily schedule appear on pages 220-246 of the transcript testimony of the ABA consultant therapist {all of who are certified in ABA and individually each has extensive (15 years) experience (Tr. p. 67)}. There is testimony on the extensive special education services provided (intermix of individual educational and therapeutic services with mainstreaming sessions and social integration activities) from each provider witness sufficient to demonstrate the intensity and scope of parent's plan to address the student's special education needs. The student is assessed to be 2-3 years behind chronological peers.

THE NYCDOE CASE

The NYCDOE bases its objection to the appropriateness of this parent designed program (in lieu of the NYCDOE's admitted failure to provide FAPE) on three theories; (1) that the failure to place this over five year old student in a school based program (or at a minimum a classroom environment) is an inappropriate educational substitute plan for this autistic child. It is argued that a home based or therapeutic intensive program is only

Case No. 106315

_____

appropriate for a pre-school child (Ex. HE 2-5); (2) the parent created program fails to include a specific licensed occupational therapist as a component of the program thereby failing in appropriateness by the non-inclusion of this critical therapy (Ex. HE 2-7) and (3) that the documented 50+ hours of combined services constitute an optimization and improper excessive amount of educational services. It is alleged that part of this excess is attributed to the failure of the parent to include occupational therapy as proscribed by the student's IEP (Ex. HE 2-6) which accounts for the additional hours to provide this critical component by practitioners not qualified to deliver the therapy.

FINDING OF FACTS AND CONCLUSIONS OF LAW

Consistent with the concession by the NYCDOE of both Prong 1 and 3 (Ex. He 2-2) of the *Burlington/Carter* analysis I find as a matter of fact that this student was not provided a free and appropriate public education in this instance. What remains is a determination as to whether or not the program implemented by the Parent is appropriate to convey an educational benefit to the student (Prong 2) and are the special education needs being addressed. The parent seeks a determination in this hearing that validates and ratifies the program designed by the parent to provide an educational benefit to the student in the absence of the NYCDOE having provided a FAPE. In determining the appropriateness of the parent's substituted program the case of Application of a Child with a Disability Appeal No. 96-53 is instructive,

"Respondent cross-appeals primarily from the hearing officer's denial of his request that the hearing officer order petitioner to pay respondent for instructing his child at home. The hearing officer held that as a matter of law he had the authority to require petitioner to pay respondent, pursuant to the decision of the United States Supreme Court in School Committee of the Town of Burlington v. Department of Education, Massachusetts, 471 U.S. 359 (1985).[3] In Burlington, the Court held that a board of education could be required to pay for educational services which were obtained for the child by the child's parents, if the services provided by the board of education were appropriate, and equitable considerations supported the parents' claim. The hearing officer denied respondent's claim because respondent had not demonstrated that the instruction which he provided to the child had met the child's special education needs (see Application of a Child with a Disability, Appeal No. 94-29). He also denied the request because respondent had not demonstrated that his decision to educate his child at home was consistent with the Federal and State requirement that children with disabilities be educated in the least restrictive environment (P.J. v. State of Connecticut, 788 F. Supp. 673 [D. Conn., 1972]; Application of a Child with a Handicapping Condition, Appeal No.

Case No. 106315

_____

92-7, decision sustained sub nom., Lord v. Bd. of Ed. Fairport CSD et al., 92-CV-6286 [W.D. N.Y., 1994]).

Although parents clearly have the right to educate their children at home in conformity with the requirements of Section 100.10 of the Regulations of the Commissioner of Education, they do not meet their burden of proof with regard to the appropriateness of those services when they seek compensation under the Burlington decision merely by indicating that they have filed the required reports for home instruction. The fact that petitioner's superintendent of schools had accepted respondent's individualized home instruction plan does not establish that the syllabi, curriculum materials, and plans of instruction which were listed in the IHIP were in fact used, or that the child benefited from instruction."

Additionally, Application of the BOARD OF EDUCATION Appeal No. 96-77 indicates one minimum standard that must be met to qualify as an appropriate parent substitute program;

"I have considered the testimony by the Director of the Clonlara School, petitioner, and petitioner's advocate, as well as the various exhibits which were introduced at the hearing to describe the boy's educational program. At the hearing, the Director of the Clonlara School testified that the private school provided "guidance and counseling," but no direct services (Transcript, page 1100). The school apparently awarded high school credit based upon a student's experiences, which in this instance involved at least some experiences which had occurred before the boy had enrolled in the Clonlara School's home study program. When asked what her school had done to address the boy's special education needs, the Director testified that the school had provided a flexible program, but she could not document what, if any, service had been provided to the boy between December, 1995 and June, 1996. Indeed, she was unaware that the boy had not been tutored during that period of time. I must concur with the hearing officer's determination to deny the relief of tuition reimbursement because there is no tangible evidence in the record before me that the private school addressed this boy's special education needs."

It is acknowledged by the NYCDOE that this autistic student is 2-3 years deficient in development as compared to her chronological peers that makes this 7.8 year old functioning level at the chronological age of a 4-5 year old (essentially a pre-school developmental level) and it is admitted by the post hearing brief of the respondent NYCDOE that such intensive service provision is proper for a pre-school age child. Parent's Exhibit S at S-9 indicates that at age 4 years 8 months the student tested equivalent of a 1 year 10-month student. The services that a handicapped child is entitled to are not automatically chronological defined but are to be designed according to the individual's handicap. This is the basis for the special education entitlement age limit of 21 years.

Case No. 106315

---

It is beyond dispute that the chosen ABA service providers possess the proper licenses, certifications and experience to be deemed competent to provide such therapies to autistic students.  The completeness and forthrightness of the combined testimony convinces me that the service type and quality is such that it cannot be gainsaid that the student's special education needs are not being addressed.  I find as a matter of fact that the parent's substituted plan addresses the special education needs manifested by the student.

The position taken by the NYCDOE relative to the philosophy that all children between the ages of 5 and 18 belong in school (or classroom environment) and therefore any plan that does not include a classroom is invalid would negate the decision in *Hendrick Hudson Dist. Bd. Of Education v. Rowley* , 458 U.S. 176;

"The Act represents an ambitious federal effort to promote the education of handicapped children and was passed in response to Congress' perception that a majority of handicapped children in the United States "were either totally excluded from schools or were sitting idly in regular classrooms awaiting the time when they were old enough to 'drop out'" H.R. Rep. No. 94-332, p.2 (1975) (H.R.Rep.)"
Continuing further,
"Special Education," as referred to in this definition, means "specially designed instruction, at no cost to parents or guardians, to meet the **unique needs** of a handicapped child, including classroom instruction, instruction in physical education, home instruction, and instruction in hospitals and institutions." 1401 (17), 10" (emphasis added)

Special education is not a place rather it is a bundle of services designed to enable a student to overcome/compensate for its handicap sufficient to be able to obtain an educational benefit.  I find as a matter of law that the educational program designed and implemented by the parent appropriate to deliver services necessary to compensate its handicapping condition to enable the student to obtain an educational benefit.  The position of the NYCDOE as to any requirement of a classroom mandate is contrary to the Individuals with Disabilities Education Act.  What is mandated are accurate evaluations observations tests plans goals benchmarks and educational placement along with all the other elements that are required when providing a FAPE.

It is recommended that the student's current providers be invited to participate with the next Committee on Special Education (CSE) meeting so that their reports

Case No. 106315

records and opinions might be reflected upon in addition to any documentation obtained by the NYCDOE such that a proper IEP might be generated.

The parent has been clear in her desire to have the student attend school and it appears that developmentally the student might be becoming school ready in the fall if investigations so indicates and an appropriate placement can be identified. The NYCDOE could begin to deliver the various 1:1 and any other appropriate related services on its own premises or within the local educational agency thereby providing opportunities for integration to take place and eliminate some of the complaint concerning the parent's failure to provide occupational therapy as well as the onerous transportation of the student. These incremental adjustments might assist the parties in mutually agreeing upon successful strategies sufficient to assist the student in compensating for the autism enabling an opportunity to achieve an educational benefit.

Concerning the allegation that the services delivered by the parent are an optimization of service, I note these same services were recently confirmed as appropriate on appeal (see above) by the State Review Office. If the student's rate of development remains constant then the student's progress is not overly out of synchronization and within the range of a pre-school child developmentally. Absent any recent testing evidence submitted by the NYCDOE to contradict that submitted by the parent (albeit 3 years ago) I am constrained by the evidence before me in the record. Parent has agreed to make the student available as needed should the NYCDOE deem it necessary to conduct evaluations.

Parent has requested an increase of services above that sustained in the aforementioned prior appeal. I decline to order same.

Regarding the specific allegation to the failure of the parent designed alternative education program to include occupational therapy the case of Gelormino v. Board of Education of Hyde Park, 04-CV-498 1, 106 LRP 44800 (S.D.N.Y. 2006) is instructive in that it directly addresses the occasion of a parent designed plan which fails in some respect to address all the components of the plan that the local educational agency would have implemented. The parent is not to be held to the identical standard as a local education agency when designing an alternative plan to educate the handicapped student.

Case No. 106315

_____

I find as a matter of fact that the Physical Education Therapist is skilled and able to advise and deliver alternative occupational therapy services to student. I decline to order any further award of compensatory occupational therapeutic services.

As and for the 2006-2007 (including summer 07) school year for which the parent has substituted an educational program, I ORDER:

1.  NYCDOE to reimburse parent at previous approved levels which are;

    a.  5 hours weekly Speech and language therapy and

    b.  2 sessions (45 min) physical therapy and

    c.  50 hours of ABA services weekly provided by licensed/certified providers.

It is further Ordered the NYCDOE to reimburse parent 3 hours per month for parent training and service coordination combined commencing January 2007 continuing through summer 2007. The reason for the reduction from the request of 2 hours per week as there are only 2 additional service providers to coordinate with IBI Associates (providing all the ABA services in house) therefore coordination only requires three individuals to participate and the level of competence and sophistication of the professionals employed (as reflected by their qualifications) indicate their combined superior expertise. Should the NYCDOE decide to offer the related services at a central location (thereby reducing transit issues) I ORDER the parent to deliver the student to the NYCDOE to receive those services and seek an increase in team coordination services at that time.

The NYCDOE is further ORDERED to include in its next CSE meetings the multiple reports, evaluations and observations of the Parent obtained ABA service providers (and the related service providers to wit; speech and language, occupational therapy and physical therapy) in consideration of services appropriate to best educate this student. The NYCDOE is ORDERED to conduct its needed testing, observations and data collection so the next CSE meeting can issue an IEP prior to May 30, 2007.

Case No. 106315

_____

All reimbursement to the parent shall be upon production of cancelled checks and support documentation as require by the NYCDOE.

Dated: March 15, 2006

*Michael Kennedy Lloyd, Esq.*

MICHAEL KENNEDY LLOYD, ESQ.
Impartial Hearing Officer


MKL:nn


## PLEASE TAKE NOTICE

Within 35 days of the date of this decision, the parent and/or the New York City Department of Education has a right to appeal the decision to the State Review Officer of the New York State Education Department under Section 4404 of the Education Law and the Individuals with Disabilities Education Act.

"The notice of intention to seek review shall be served upon the school district not less than 10 days before service of a copy of the petition for review upon such school district, and within 25 days from the date of the decision sought to be reviewed. The petition for review shall be served upon the school district within 35 days from the date of the decision sought to be reviewed. If the decision has been served by mail upon petitioner, the date of mailing and the four days subsequent thereto shall be excluded in computing the 25- or 35-day period." (8NYCRR279.2[b]) Failure to file the notice of intention to seek review is a waiver of the right to appeal this decision.

Directions and sample forms for filing an appeal are included with this decision. Directions and forms can also be found in the Office of State Review website: www.sro.nysed.gov/appeals.htm.

Case No. 106315

## DOCUMENTATION ENTERED INTO RECORD NOVEMBER 28, 2006

A.  Demand for Due Process, 9/1/06, 1 p.                                Parent

B.  Amended Demand for Due Process, 9/12/06, 3 pp.       Parent

C.  IEP, 10/11/06, 13 pp.                                                        Parent

D.  IEP, 8/15/06, 13 pp.                                                          Parent

E.  IEP, 6/24/03, 22 pp.                                                          Parent

F.  Hearing Officer's Findings of Fact and Decision,        Parent
    6/21/05, 8 pp.

G.  State review Officer Decision, 9/7/05, 4 pp.               Parent

H.  Letter from parent to CSE Chair with 8/17/06             Parent
    Letter attached, 9/8/06, 3 pp.

I.  7/18/06 Physical and Immunization Schedule,             Parent
    10/18/06, 4 pp.

J.  Social History Update, 7/31/06, 5 pp.                        Parent

K.  Vineland Evaluation Summary, 7/31/06, 1 pp.           Parent

L.  Comprehensive Evaluation, 7/28/06, 7 pp.                 Parent

M.  Physical Therapy Report, 3/11/06, 3 pp.                   Parent

N.  Educational Progress Report, 2/1/06, 4 pp.               Parent

O.  Speech and Language Progress Report,                    Parent
    1/16/06, 4 pp.

P.  Resume – Arsenio Paez, Undated, 3 p.                     Parent

Q.  Resume – Sandra Lucente, Undated, 1 p.                 Parent

R.  Resume – Lisa Frenette, Undated, 1 p.                    Parent

S.  Summary of Evaluation by Yale University,              Parent
    Undated, 32 pp.

Case No. 106315

| HEI | Parent's Delivery confirmation receipt of Documents Sent to Department of Education, 2/26/07, 17 pp. | Impartial Hearing Officer |
|-----|-----|-----|
| HEII | NYCDOE Post Hearing Brief, 3/2/07, 8 pp. | Impartial Hearing Officer |

## DOCUMENTATION ENTERED INTO RECORD FEBRUARY 6, 2007

| T. | Order on Pendency, 11/14/06, 6 pp. | Parent |
|-----|-----|-----|
| U. | IEP, 5/24/04, 17 pp. | Parent |
| V. | Letter from Parents to CSE, 12/7/06, 2 pp. | Parent |
| W. | Decision of Hearing Officer Pennington, 1/29/07, 17 pp. | Parent |

# INTERIM ORDER

Case Number:           111679

Student's Name:        N███ R███

Date of Birth:         May 24, 1999

District:              3

Hearing Requested By:  Parent

Date of Hearing:       November 6, 2007

Hearing Officer:       Michael S. Lazan, Esq.

Hearing Officer's Interim Order                                                            1

Case No. 111679

---

## NAMES AND TITLES OF PERSONS WHO APPEARED

Skye Gold                    Chairperson Designee, CSE    Department of Education
                             District 3

On October 15, 2007, the matter of N███ R. came before me as impartial hearing officer pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. Sect. 1415(f)(1). Appended to the record are the names of the persons who appeared. This hearing was requested to review N███s program and placement for 2007-2008 and to request reimbursement in connection thereto.

At the first hearing date, the parties presented argument on the issue of the pendency placement. The parties subsequently presented written briefs on this issue.

The District indicated that, in this matter, the hearing officer's decision for the 2006-2007 school year is not the student's pendency placement. The District pointed to the commentary section of the IDEIA regulations and argued that the 2006 regulations (34 CFR Sect. 300.518(d)) establish that pendency is established by administrative decision makers in a "two tier state" like New York only where the decision maker is the second tier officer, i.e the State Review Officer. 71 Fed. Reg. No. 156 at 46710 (August 14, 2006). The District also contends that the relevant State Law provision on pendency, Education Law Sect. 4404(4), is preempted by the federal mandate.

The parent contends that the District misinterprets the regulation and the comments. The parent contends that the comments indicate that pendency is not established by the first tier hearing officer only where the first tier hearing officer has rendered a decision that has been appealed and is not yet final. The parent presents an opinion letter by Patricia Guard of the United States Department of Education Office of Special Education and Rehabilitative Services dated September 4, 2007 in this regard. The parent also contends that Education Law Sect. 4404(4) establishes that pendency is created by the first tier hearing officer in an unappealed decision.

I have reviewed the relevant regulation and commentary and I find it ambiguous. While I can certainly understand the District's interpretation of the comments, the commentary also indicates that the change in the regulation is to conform the prior regulation to caselaw. The commentary cites to a Third Circuit and Ninth Circuit case along these lines. Neither case referenced in the commentary suggests the principle of law put forth by the District, i.e. that administrative decisions constitute pendency in a

Case No. 111679

_____

two tier state only as a result of the second tier decision maker.  See Susquenita School
District v. Raelee S., 96 F.3d 78 (3d Cir. 1996); Clovis Unified School District v.
California Office of Administrative Hearings, 903 F.2d 635 (9th Cir. 1990).
Additionally, I find the letter of Patricia Guard persuasive on the notion that an
unappealed first tier hearing officer's decision does constitute pendency.    I rule that
pendency is established by hearing officer Michael Kennedy Lloyd's decision for 2006-
2007. It is so ordered.

Dated: November 7, 2007

MICHAEL S. LAZAN, ESQ.
Impartial Hearing Officer

MSL:ds



# The University of the State of New York

## The State Education Department
### State Review Officer

No. 07-134

Application of the **NEW YORK CITY DEPARTMENT OF EDUCATION** for review of a determination of a hearing officer relating to the provision of educational services to a child with a disability

**Appearances:**

Michael Best, Special Assistant Corporation Counsel, attorney for petitioner, Karyn R. Thompson, Esq., of counsel

Mayerson & Associates, attorney for respondents, Gary S. Mayerson, Esq., of counsel

### DECISION

Petitioner appeals, pursuant to section 8 NYCRR 279.10(d) of the Regulations of the Commissioner of Education, from an interim decision of an impartial hearing officer determining respondents' daughter's pendency placement during a due process proceeding challenging the appropriateness of petitioner's recommended educational program for the student for the 2007-08 school year. The impartial hearing officer found that the student's pendency placement was established by a prior impartial hearing officer's March 2007 decision. The appeal must be dismissed.

Preliminarily, I will address a procedural issue. Respondents attach to their answer 14 exhibits (Answer Exs. A-N). In its reply, petitioner objects to respondents' attempt to introduce these documents (Reply ¶¶ 1-6). Generally, documentary evidence not presented at an impartial hearing may be considered in an appeal from an impartial hearing officer's decision if such additional evidence could not have been offered at the time of the hearing and the evidence is necessary to enable a State Review Officer to render a decision (Application of a Child Suspected of Having a Disability, Appeal No. 07-042; Application of a Child with a Disability, Appeal No. 06-058; Application of a Child with a Disability, Appeal No. 05-020). Here, I find that the exhibits are not necessary for my review and I therefore decline to accept them.

The student is classified as having autism (Parent Br. Ex. D;[1] see 34 C.F.R. § 300.8[c][1]; 8 NYCRR 200.1[zz][1]). On September 1, 2006, respondents requested an impartial hearing seeking, among other things, reimbursement for the 12-month educational program they had developed for their daughter for the 2006-07 school year. The impartial hearing officer in that matter rendered a decision on March 15, 2007 ordering petitioner to reimburse respondents, through summer 2007, for private services obtained unilaterally. On June 25, 2007, the Committee on Special Education (CSE) met to develop the student's individualized education program (IEP) for the 2007-08 school year (Parent Br. Ex. D). The IEP developed as a result of that meeting recommended that the student be placed in a 6:1+1 special class in a specialized school with related services (id. at p. 1). On August 31, 2007, respondents filed a due process complaint notice challenging the program recommended for their daughter for the 2007-08 school year (Parent Br. Ex. B). In their due process complaint notice, respondents invoked pendency asserting that their daughter's pendency placement, during the current proceedings, is determined by the prior impartial hearing officer's March 2007 decision which was not appealed.

The impartial hearing on the issue of pendency, which is the subject of this appeal, took place on October 15, 2007. The impartial hearing officer rendered an interim decision on November 7, 2007. He found that pendency is determined by the prior impartial hearing officer's March 2007 decision (IHO Decision at p. 3). In his November 2007 interim decision, the impartial hearing officer noted that the relevant regulations and commentary were ambiguous (id. at p. 2). The impartial hearing officer further indicated that he found the September 2007 letter of the acting director of the Office of Special Education Programs (OSEP) of the United States Education Department "persuasive on the notion that an unappealed first tier hearing officer's decision does constitute pendency" (id. at p. 3).

Petitioner appeals from the November 2007 impartial hearing officer's interim decision, contending that pendency cannot arise from the prior impartial hearing officer's decision, that the student does not have a current educational placement for pendency purposes and that the student should be treated as an initial applicant to public school. Respondents argue that a final and "non-appealable" decision from an impartial hearing officer becomes the then current educational placement for pendency purposes.[2]

The pendency provisions of the Individuals with Disabilities Education Act (IDEA) and the New York State Education Law require that a student remain in his or her then current educational placement, unless the student's parents and the board of education otherwise agree, during the pendency of any proceedings relating to the identification, evaluation or placement of the student (20 U.S.C. § 1415[j]; Educ. Law § 4404[4]). Pendency has the effect of an automatic injunction, which is imposed without regard to such factors as irreparable harm, likelihood of success on the merits, and a balancing of the hardships (Zvi D. v. Ambach, 694 F.2d 904, 906 [2d Cir. 1982]; see Wagner v. Bd. of Educ., 335 F.3d 297, 301 [4th Cir. 2003]; Drinker v. Colonial Sch. Dist., 78 F.3d 859, 864 [3d Cir. 1996]). The purpose of the pendency provision is

---

[1] Respondents' brief dated October 18, 2007 from the impartial hearing below is identified in the hearing record as "Petitioners' Brief on 'Burden' and Pendency."

[2] Respondents ask that I recuse myself. I have considered their request and find no basis in law or fact for recusal and I find that I am able to impartially render a decision (see 8 NYCRR 279.1).

"intended to maintain some stability and continuity in a child's school placement during the pendency of review proceedings" (Bd. of Educ. v. Ambach, 612 F. Supp. 230, 233 [D.C.N.Y. 1985]; see Honig v. Doe, 484 U.S. 305, 323 [1987] [finding that Congress intended to "strip schools of the unilateral authority they had traditionally employed to exclude disabled students . . . from school"]).  The pendency provision does not mean that a student must remain in a particular site or location (Concerned Parents and Citizens for the Continuing Educ. at Malcolm X Pub. Sch. 79 v. New York City Bd. of Educ., 629 F.2d 751 [2d Cir. 1980]; Application of the Bd. of Educ., Appeal No. 99-90), or at a particular grade level (Application of a Child with a Disability, Appeal No. 95-16).

    As noted in Application of a Child with a Disability, Appeal No. 06-131, in a two-tiered state, such as New York, a student's pendency placement can be changed when a State Review Officer agrees with the student's parents that a change in placement is appropriate (34 C.F.R. § 300.518[d]).  The Analysis of Comments and Changes accompanying the new regulations state:

> [T]he Act's pendency provision that when a hearing officer's decision is in agreement with the parent that a change in placement is appropriate, that decision constitutes an agreement by the State agency and the parent for purposes of determining the child's current placement during subsequent appeals.  See, e.g., Burlington School Committee v. Dept. of Educ., 471 U.S. 359, 372 (1985); Susquenita School District v. Raelee S., 96 F.3d 78, 84 (3rd Cir. 1996); Clovis Unified Sch. Dist. v. Cal. Office of Admin. Hearings, 903 F.2d 635, 641 (9th Cir. 1990).  To clarify that new Sec. 300.518(d)... does not apply to a first-tier due process hearing decision in a State that has two tiers of administrative review, but only to a State-level hearing officer's decision in a one-tier system or State review official's decision in a two-tier system that is in favor of a parent's proposed placement, we are removing the reference to "local agency" in new Sec. 300.518(d).  This change is made to align the regulation more closely with case law.

(Child's Status During Proceedings, 71 Fed. Reg. 46710 [Aug. 14, 2006]; see 34 C.F.R. § 300.518[d]).

    Subsequent to the issuance of the decision in Application of a Child with a Disability, Appeal No. 06-131, OSEP issued an interpretation of the above referenced regulation in a September 4, 2007 letter (Letter to Hampden, ___ IDELR ____, 108 LRP 2225 [OSEP 2007]; Parent Br. Ex. E).  OSEP is the agency charged with the principal responsibility for administering the IDEA (20 U.S.C. § 1402[a]).  Substantial deference must be given to an federal agency's interpretation of its own regulations; the interpretation must be given "controlling weight unless it is plainly erroneous or inconsistent with the regulation" (Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 [1994] [internal citations omitted]; see Stinson v. U.S., 508 U.S. 36, 43-45 [1993] [includes agency's interpretive commentaries]; see, e.g., Honig, 484 U.S. at 325 n.8 [1988][where the IDEA was ambiguous, Court deferred to agency's

interpretation in an OSEP policy letter, which comported with the purpose of the Act]; Hooks v. Clark Co. Sch. Dist., 228 F.3d 1036, 1040 [9th Cir. 2000] [defers to agency interpretation of the IDEA in OSEP policy letter]; D.P. v. School Bd. of Broward Co. Fla., 360 F. Supp. 2d 1294, 1298 [S.D. Fla. 2005] [defers to agency interpretation of the IDEA]; Raymond S. v. Ramirez, 918 F. Supp. 1280, 1292-93 [N.D. Iowa 1996] [defers to agency interpretation of the IDEA]). An administrative body or reviewing court's task is not to decide which among several competing interpretations best serves the regulatory purpose; it must defer to the agency's interpretation unless "an alternative reading is compelled by the regulation's plain language or by other indications of the [agency]'s intent at the time of the regulation's promulgation" (Thomas, 512 U.S. at 512).

OSEP issued the September 4, 2007 letter in response to a request to clarify the interpretation of the newly enacted federal regulation set forth in 34 C.F.R. § 300.518(d) (Letter to Hampden,    IDELR ____, 108 LRP 2225 [OSEP 2007]). The OSEP letter noted that the relevant pendency provisions did not address a situation in a two-tier due process system, such as New York, in which a local agency did not appeal the first-tier impartial hearing officer's decision on the merits that was favorable to the parent (id. at p. 2). Citing the finality provisions of the federal regulations (see 34 C.F.R. § 300.514[a]), the OSEP letter then clarified that in a two-tier due process system, such as New York, a first-tier impartial hearing officer's "unappealed decision is final, and must be implemented. That final decision on the merits, as implemented, becomes the child's current educational placement" (id. at pp. 1-2). The OSEP letter further indicated that the same result would occur if the first-tier impartial hearing officer's decision on the merits favored the local agency and the parent did not appeal; that is, the unappealed first-tier impartial hearing officer's decision becomes the child's current educational placement for purposes of pendency (id. at p. 2).

The prior impartial hearing officer's March 2007 decision on the merits was not appealed. Respondents filed their due process hearing request in this proceeding on August 31, 2007. Given the September 4, 2007 OSEP letter, I agree with the impartial hearing officer in this matter and find that the prior unappealed impartial hearing officer's March 2007 decision, as implemented, is the student's current educational placement for pendency purposes in this proceeding.

**THE APPEAL IS DISMISSED.**

**Dated:**          **Albany, New York**
               **February      , 2008**
                     **11**

                                            **PAUL F. KELLY**
                                            **STATE REVIEW OFFICER**

4